STOWE *versus* SEWALL.

1. Before joinder in error, additional assignments, are allowable, of course : but after joinder, only such will be permitted to be filed, as go to the merits.; and then by leave of the court.

2. The obligor in an attachment bond, conditioned for the return of the property attached, or for the satisfaction of any judgment rendered; is an incompetent witness in the attachment cause.

3. Because an *account stated*, may be declared on, as such, the plaintiff is not precluded from introducing an *account stated*, under any of the *assumpsit accounts*, to which it may be applicable.

4. If, after an action commenced, an account is stated between the parties, it may properly be given in evidence, on the trial.

5. *Semble*—that the absconding of a partner, gives no more right to another partner to sue at law, than if the former had not absconded.

6. But if an action at law be brought by one co-partner against another, before final settlement, and afterwards, before the trial, a settlement takes place, and a balance is struck between the parties, the courts will presume that the accounts were thus settled with a view to the pending action : and so, be evidence to sustain the action : *especially after the defendant had absconded.*

7. The affidavit required in the statutes authorising the issuance of attachments, should show what part, if any, of the debt sued on, is not due ; and when it will be due.

8. Where a note was offered in evidence, in an attachment cause, (which note was not due when the attachment issued ;) and neither the affidavit nor any part of the proceedings showed that fact, held not to be admissible.

In error from Mobile Circuit court.

On the 17th April, 1827, Rufus Sewall issued an attachment in his favor, against Daniel Stowe, as an absconding debtor, for fourteen thousand dollars.—— There was no specification of the cause of action, either in the affidavit, or on the writ; but, simply that Stowe was " indebted, fourteen thousand dollars, and that he so absconds," &c. The attachment was

made returnable to the November Term, 1827, of the Circuit court of Mobile county; and was levied, on the day it issued, on sundry goods, in the hands of one J. T. Franklin.

The plaintiff, at the November Term, 1827, filed his declaration, commencing, "that Daniel Stowe, late doing business under the firm and style of Stowe, Ellis & Co., was indebted," &c. It consisted of five common counts: first, for goods sold; second, money laid out and expended; third, money lent and advanced; fourth money had and received; fifth on an account, stated—all in the common form, and all alleging the indebtedness and liability to have accrued on the 1st of April, 1827. There was no order of continuance taken at the November Term, 1827, and no appearance by the defendant.

At the February Term, 1828, there being no appearance by the defendant, the plaintiff took a judgment by default, and a writ of enquiry; and the case was continued from term to term, till November Term, 1830, when the writ of enquiry was executed, and a finding by the jury, for ten thousand seven hundred and eighty-four dollars and three cents, for which judgment was rendered for the plaintiff.

The evidence upon which this verdict was founded, consisted, first, of a note, signed by Stowe, Ellis & Co., dated the 6th January, 1827, at five months, for two thousand five hundred dollars, in favor of R. Sewall, negotiable at the Bank of Mobile; and was indorsed, by R. Sewall, to George Starr: the name of George Starr was erased, but there was no evidence when it was done.

This note was objected to, on the ground, that it

did not appear to be due, when the attachment was levied; and, that it was not embraced by the declaration—it alleging the indebtedness to have occurred on the 1st April, 1827 : and also, because there was no evidence to show that it was the property of the plaintiff when the process issued; but that, for ought that appeared, it was the property of Starr—it was allowed to go to the jury.

The plaintiff was also permitted to read an account current, between Sewall, and Stowe, Ellis & Co., exhibiting a balance of five thousand nine hundred and fifty-four dollars and sixty cents, due to Sewall, this account was dated at New York, the 30th September, 1827, and was signed by J. T. Franklin, assignee of Stowe, Ellis & Co. The plaintiff, to charge Stowe by this signature of Franklin, read to the jury, an advertisement in the following words, from the Mobile Register :

"The undersigned being about to leave the State, for New York, on special and important business to himself and his commercial friends, for a short period, has appointed James T. Franklin, with full power, to transact all business appertaining to the firm of Stowe, Ellis & Co., during his absence.—Mobile, April 16, 1827. [Signed] Dan'l Stowe."

This account current embraced a settlement of sundry partnership transactions, between the parties, in which there were credits and debits of profit and loss, and capital advanced on said partnership account.

The reading of the above account current was objected to; but the objection was overruled, and the court charged the jury, that one partner could sue another, by attachment, although no settlement of the

partnership account had been made; and that the account might be received as evidence of the indebtedness of the defendant, under said counts—all of which was objected to by the defendant; but which was admitted by the court.

Several points taken up by the court and decided, on attachment laws, long since superseded, the Reporter has not thought proper to advert to.

*Hitchcock,* for the plaintiff—*Gordon, contra.*

TAYLOR, J.—This suit was commenced against Stowe, the plaintiff in error, as an absconding debtor, by process of attachment.

· Since the commencement of this term, the plaintiff's counsel have asked to be permitted to add an additional assignment of error, and, by the direction of the court, the case has been argued as if that assignment had been filed in due time, with the view of disposing of this motion, at the time the opinion is delivered upon the general merits of the case.

The second rule which has beeen adopted for the government of the practice, in this court, ·declares, that "on application to the court, additional assignments may be filed before joinder; but after joinder, only such as will affect the merits of the controversy." We believe this rule to be plain and unambiguous, and that it conveys an unquestionable right to make the additional assignment in this case, as there had been no joinder in error, when the motion was made. It is no sufficient answer to this, that the court has reserved the power to regulate the exercise of this right, by requiring that application shall be made for leave to file additional assignments, in all cases.²—

This was intended to prevent conflicts between counsel, with regard to the time at which the new assignment and, the joinder were filed. The additional assignment will therefore be taken into consideration, in the opinion now about to be delivered. Under this assignment it is insisted, that the affidavit upon which the writ of attachment was sued out, is radically defective; that it, should have stated the cause of action, or that the cause of action should have been endorsed upon it or the writ; that when the indebtedness is by account, the account should be attached to it, and it should expressly declare that all off-sets and discounts had been deducted.

The second section of the act of 1807, entitled " an act establishing superior courts, and declaring the powers of the territorial judges," in prescribing the mode of issuing the writ of *capias ad respondendum*, declares, that "it shall be the duty of the clerk, or plaintiff's attorney, to endorse on the back of the writ, the cause of the action, the nature of the specialty, or the other grounds on which the action is founded." As a copy of the writ is to be left with the defendant, at the time it is executed, this provision was certainly intended, in part at least, to inform him of the cause of action. It has, however, been well replied, by the defendant in error, that this reason does not extend to the service of the process of attachment. This is a proceeding, not *in personam*, but *in rem:* no information is contemplated to be afforded to the defendant when the process is served: a copy of the writ is not required to be left with him, for the whole proceeding is grounded upon the presumption of his absence. But this court has heretofore decided[a] that the omission to make this en-

[a] 2 Stewart, 130

dorsement upon a writ of *capias ad respondendum,* can not be assigned as error; and there is no disposition to disturb that decision.

The second section of the act of 1807, entitled, "An act directing the method of proceeding in courts of common law, and equity, against absconding debtors, and other absent persons," provides, that "if such plaintiff, his or her attorney, agent or factor, shall swear to the amount of his or her debt or demand, to the best of his or her knowledge or belief, after deducting all off-sets and discounts due to the defendant; and shall produce a regular statement of his account current, or demand, and swear to the same—it shall be lawful for such judge, &c. to grant an attachment." This section does not profess to give the form of an affidavit; but to prescribe its requisites. One of those requisites is, that it shall specify the amount due, after deducting "all off-sets and discounts." I do not consider this to mean, that the affidavit, in words, must declare, that "all off-sets and discounts" are deducted; but, simply, that the plaintiff, in ascertaining the amount due, shall deduct them, and specify, in his affidavit, the sum which remains, after this deduction is made. It is, however, explicitly required, "that the plaintiff shall produce a regular statement of his account current, or demand, and swear to the same."

It is contended, however, that this part of the affidavit is dispensed with, by the act of 1814, entitled "an act to revise, consolidate, and amend the several acts relative to justices of the peace and constables." The fifth section of that act is as follows: "that when the process shall be required to be in the nature of an attachment, the justice, before issuing

the same, shall take the affidavit of the plaintiff, his or her agent or attorney, of the amount of the debt or demand due, from the defendant, and that he or she absconds or secretes him or herself; that he or she actually resides out of this territory, or that he or she is about to remove him or herself, or effects from this territory, so that the ordinary process of law can not be served upon him, or her; and that the attachment is not sued out for the purpose of vexing or harrassing the defendant, or other improper motive," &c. This provision relates only to cases within the jurisdiction of justices of the peace; but the fifteenth section of the same act provides, " that any justice of the peace may issue an attachment for any sum or sums above their jurisdiction, and make the same returnable to the superior court: *Provided*, the plaintiff comply with the terms and requisitions contained in the fifth section of this act."

The attachment in the case before us, was sued out before a justice of the peace, under this section. It may be well to inquire whether it is necessary to annex a statement of the account between the parties, when the suit is founded on one, and swear to it, if the amount be within a justices jurisdiction? The fifth section, which prescribes the affidavit, in such case, does not require it. This statute vests in justices, the authority to issue attachments, for the first time, and defines the acts to be done by the plaintiff. He is to make a particular affidavit, give bond, &c. If it had been intended that any thing more should have been done, it is presumable it would have been pointed out, either by reference to some other act, or by directly stating what it was. This is the more probable, as these small suits are generally carried

on without the aid of counsel, and justices can not be supposed to look further than to the directions which are thus plainly given to them. The affidavit which has been made in this case would have been sufficient, then, if the debt sworn to had been within the jurisdiction of a justice of the peace. But the fifteenth section of the act declares, " that a justice may issue an attachment for any sum above his jurisdiction, *provided*, the plaintiff comply with the terms and requisitions contained in the fifth section :" thereby placing all on a footing, and making that good for the larger, which would be for the smaller sum.

It is also assigned as error, that Franklin, a witness offered by the plaintiff in error, upon the trial below, was rejected as incompetent, because he was one of the obligors to the replevy bond.

It appears that this bond was not executed by Stowe, but by Franklin and others. It is insisted that the rejection of this witness was erroneous, for two reasons—first, because he had no interest in the event of the suit, as he occupied nothing more than the character of a stake holder : second, because it was his own act to become an obligor to the delivery bond, and he could not, by any voluntary act, deprive the plaintiff in error of his testimony.

It is quite evident that the witness occupied some other situation than that of a stake holder. He had entered into a bond " to return the property attached, or to pay and satisfy the judgment which might be rendered against the defendant." If the specific property should not be returned, in the event of a recovery by the plaintiff, and it should be of less value than the amount of that judgment, the witness would be liable for the deficiency : he therefore might be

interested in reducing the amount of the recovery.—
It can not be supposed that he replevied the proper-
ty, for the simple object of retaining it, specifically,
to answer the judgment of the court.

Nor is the other reason more tenable in a case like
this. The circumstances do not authorise the infer-
ence, that the witness executed the bond against the
consent of Stowe. The latter, it appears from the
evidence in the cause, had appointed him his attor-
ney in fact, during his absence from Mobile : he had
not returned when the bond was executed, and, al-
though the bond was executed by him individually,
it is a necessary inference, from the relative charac-
ters occupied by the witness and Stowe, that it was
done with Stowe's approbation and consent. The
witness, then, was properly rejected.

On the trial, an account, which purports to be an
account stated, between plaintiff in error, and Stowe,
Ellis & Co., signed by James T. Franklin, assignee
of Stowe, Ellis, & Co., dated 30th September, 1827,
was offered in evidence, and, although objected to,
permitted to go to the jury. This also is assigned
for error, for several reasons. First, because the ac-
count appears to have been signed at New York,
and the agency of Franklin was limited to Alabama.

Second—Because Franklin did not sign the ac-
count as agent, but as assignee, and no proof was of-
fered of his being authorised to act in that character.

Third—The account, if proved, could not be read
under any of the counts in the declaration ; it having
been made and signed after the declaration was filed.

Fourth—Because the account purports to settle
partnership transactions, and was stated after the suit
was brought.

A notice was published in Mobile, on the 16th April,1827, the day before the attachment was sued out in this case, by the plaintiff in error, as follows : " The undersigned being about to leave the State for New York, on special and important business, to himself and his commercial friends, for a short period, has appointed James T. Franklin, with full power to transact all business appertaining to the firm of Stowe, Ellis & Co. during his absence." The declaration · charges that the plaintiff in error carried on business in the name of Stowe, Ellis & Co.; so that, to us it appears, that there was no one in partnership with him in the business conducted in that name.

The authority which was vested in the agent by · the power, does not appear to be restricted to Mobile, or to the State of Alabama ; though from the reason assigned for the appointment, viz : that Stowe was about leaving the State, it is presumable it was intended that he should act in relation to the business in Alabama, particularly. From the whole proceedings, although no where directly stated, it seems that the business of Stowe, Ellis & Co., was carried on in Mobile. But the single circumstance, that Franklin signed his name to the account in New York, is no evidence of an excess of authority. We must suppose the bnsiness, of which this is an account, was done in Mobile, and that the books were kept there ; the account may have been made out in that place, and an omission to sign it supplied in New York; and this would not render it the less valid, although Stowe may have been there when the deficiency was supplied. The appointment expressly vests in the agent " full power to transact all business relating to the firm of Stowe, Ellis & Co.:" if, therefore, it

should appear that the agent had acted beyond the limits of this State—if Stowe were not at the place where he did act, whatever was thus, done by him, would be valid. The first reason, therefore, for this objection, can not be sustained.

As to the second, it is not considered material that the agent gives to himself a wrong description; the inquiry is, did he act with authority? The account as made out was that of Moses Sewall with Stowe, Ellis & Co., and is signed by James T. Franklin, while he is proved to have ample powers to act for that house; his annexing the letters " *assee,*" can not vitiate what would be good if that description were omitted.

The third reason, it is believed, is equally untenable with either of the others. Because an account stated may be declared on as such, this does not preclude the plaintiff from introducing it under other counts, to which it may be applicable; and surely it would be novel doctrine to determine, that if, after action brought, the parties were to state an account, and the defendant were to thus acknowledge he was indebted to the plaintiff, this could not be given in evidence on the trial, when a verbal acknowledgement to the same effect would authorise recovery.

The fourth reason urged in favor of the objection to this account, has produced more difficulty; but it is not insuperable. We are inclined to the opinion, that the absconding of a partner gives no more right to his copartner to institute a suit at law against him, than if he had not absconded; that equity would afford ample relief; and, that there is not, in such case, a " *necessity;*" for extending the jurisdiction of the courts of law, for the purpose of embrac-

ing such a case. On this point, however, we do not positively decide, as it is not necessary, in order to dispose of the case. We believe, that if an action of assumpsit is brought by one partner, against another, before a final settlement—and when, of course, he had no cause of action, at law—yet, if, afterwards, and before the trial of the case, a final settlement takes place, and a balance is struck between them, especially after one of the partners has absconded, so as to evade the service of process, it ought to be presumed, that the accounts were thus settled, with an express view to the suit which had been instituted, and with the intention that such account should be received as evidence, to sustain the action. In this case, the account was made out by the agent of the partner, defendant below; and, the plaintiff, by producing it, showed, that he consented to it.

I would again observe, that the peculiar situation of the parties, produced by the absconding of Stowe, goes far to confirm us in the opinion, that this evidence was properly admitted. Whether a final settlement and balance struck; without an express promise, would, in ordinary cases, support an action by one partner against another, we leave to future adjudication; but if a suit has been brought before such settlement, and is then pending, it might then be reasonable to presume, that it was made to enable the plaintiff to use it as evidence upon the trial.

A note, for two thousand two hundred and eighty six dollars, and twenty-two cents, executed by Stowe to Sewall, and which did not fall due until upwards of a month after the attachment was sued out, was offered in evidence on the trial below; and, although objected to, was permitted to go to the jury, and this opinion excepted to.

It is now insisted, that there was error in admitting this note—

First, because, neither the affidavit, nor any other part of the proceedings, had, at the time the attachment was sued out, showed, that any part of the indebtedness was for a sum not due.

Secondly, because the declaration, which contains nothing but the common counts, describes the whole amount sued for, as due, before the maturity of the note.

We think, that if any sum is claimed, which is not due at the time the attachment is sued out, the affidavit should so state it; and the declaration should be made to conform to the facts of the case, in this respect. The statutes seem to contemplate this course, although they contain no express provision on the subject. In the seventh section of the act "relative to justices of the peace and constables," before referred to, it is said, "that on application to any justice of the peace, if the plaintiff comply with the fifth section of this act, (which prescribes the oath,) said justice may issue an attachment, although the debt or demand of the plaintiff may not be due"—plainly drawing a distinction between such debts as are, and such as are not due. The fifth section requires, that the plaintiff shall swear to the amount *due.*"— The seventh must have intended, that when it was not due, the oath should be varied to conform to the change of case—as it could not require a suitor to swear that a debt was due when it was not. The correctness of this construction is the more apparent, from the provision which is made for the disposition of the property.

In the seventh section of the justices' law just re-

ferred to, it is provided, "that the attachment shall be a lien on the property attached, until such debt or demand becomes due, when judgment shall be rendered and execution issued : but, if the property so attached, be clearly of a wasting or perishing nature, then the same shall be sold, giving a credit on the sum, until the debt or demand shall become due," &c. The proceedings should show when the judgment is to be rendered; and, if perishable property is levied on, when the credit, on which it is to be sold, will expire—and, it would be safest for the affidavit, itself, to show this.

The act of January, 1814, " to amend the attachment law," which was the first that authorised an attachment before the debt was due, was passed at a time, when it was required that the plaintiff should produce, at the time of suing out the attachment, " a regular statement of his account current or demand, and swear to the same." That act contained provisions greatly similar—indeed, almost identical with those contained in the seventh section of the act, relative to justices of the peace and constables, above referred to. It is essential, to enable the court to make the necessary orders for the sale of perishable property, or of any other kind, which may be required by the nature of the case, that the affidavit should show what part, if any, of the debt sued on, is not due, and when it will be due.

We do not believe there is any material variance between the writ and declaration. The Circuit court erred in permitting the note to be read to the jury.

Judgment reversed, and cause remanded.

LIPSCOMB, C. J., not sitting.